UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VICTOR THIFFAULT,<br>    Plaintiff<br><br>V.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA<br>    Defendant | CIVIL ACTION NO. 05-40011-FDS |

**SUN LIFE ASSURANCE COMPANY OF CANADA'S OPPOSITION
TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Sun Life Assurance Company of Canada ("Sun Life"), opposes Mr. Thiffault's cross-motion for summary judgment on the grounds that nothing stated in it is sufficient to support a finding that Sun Life was arbitrary or capricious when it determined that Mr. Thiffault was disabled due to a mental illness.[1] The Administrative Record, considered in its entirety, not piecemeal as Mr. Thiffault has attempted to present it to the Court, leads to the inescapable conclusion that Mr. Thiffault is not totally disabled from performing his job by any *physical* illness.

For these reasons, and the reasons set forth in Sun Life's motion for summary judgment, supporting memorandum, and statement of facts, Mr. Thiffault's motion for summary judgment should be denied and Sun Life's should be granted.

---

[1] Because Mr. Thiffault's memorandum in support of his motion for summary judgment and his opposition to Sun Life's motion for summary judgment are largely the same, Sun Life has not moved for leave to file a reply to his opposition. Instead, Sun Life submits this opposition to Mr. Thiffault's motion, with the intention that it also be considered by the Court as a reply to his opposition to its motion for summary judgment.

{H:\PA\Lit\15928\55019\A0957071.DOC}

I. ARGUMENT

  A. The Standard For Summary Judgment Applied In An ERISA Case Is Different Than The Standard Applied In Other Cases.

The summary judgment standards referenced by Mr. Thiffault at Section B of his memorandum, p. 5, do not apply in this case. As the First Circuit court has stated, "in an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). "This means the non-moving party is <u>not</u> entitled to the usual inferences in its favor." Id. (emphasis added).

Furthermore, it is undisputed that the arbitrary and capricious standard of review applies to Sun Life's decision on Mr. Thiffault's claim under the Plan. As such, Sun Life's decision "must be upheld 'unless arbitrary, capricious, or an abuse of discretion.'" Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30 (1st Cir. 2001), *quoting* Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998).

  B. Mr. Thiffault Bears the Burden of Proof in this Case and He Cannot Meet His Burden of Establishing that a Physical Illness Makes Him Totally Disabled.

Mr. Thiffault claims that it was not mental illness that "rendered [him] unable to perform his regular duties or return to work in any capacity, [rather] it was a physical condition." (Plaintiff's memorandum, p. 5). To support this argument Mr. Thiffault provides the Court with a list of medical diagnoses that he has received in the past. However, Mr. Thiffault never identifies <u>which</u> alleged medical condition or conditions render him disabled nor does he submit medical evidence which identifies or substantiates any restrictions or limitations suffered as a result of these conditions.

Illness does not equal disability.  Under the terms of the Plan, Mr. Thiffault is considered totally disabled "if because of Injury or Sickness he is unable to perform all of the material and substantial duties of his own occupation."  (AR-0151).  That Mr. Thiffault has or had certain medical diagnoses does not mean that he is disabled within the meaning of the Plan and entitled to receive benefits.

Mr. Thiffault bears the burden of proof in this case.  *See* Orndorf, 404 F.3d at 519; Brigham, 317 F.3d at 84-85; Terry v. Bayer, 145 F.3d 28, 34 (1st Cir. 1998).  Nothing he states in his opposition to Sun Life's motion for summary judgment or in his own motion for summary judgment enables him to meet his burden of proving that he is disabled due to a physical illness.

    1.    There is insufficient evidence in the Administrative Record to establish that Mr. Thiffault has a cardiac condition that makes him totally disabled.

Although, he now says that he has a "serious cardiac condition," Mr. Thiffault did not claim to be disabled by a cardiac condition during the time that Sun Life evaluated his claim for disability benefits.  He did not even do so in October 2002 when he wrote to Sun Life requesting a review of its decision to close his LTD claim.  (AR-0757-58).  Indeed, Mr. Thiffault did not claim to be disabled by a cardiac condition prior to the summary judgment phase of this case.[2]  Only now, in his motion for summary judgment and his opposition to Sun Life's motion for summary judgment, does Mr. Thiffault claim that he is disabled due to a cardiac condition.

To support his motion and his opposition, he claims "Sun Life knew from the inception of this claim that Mr. Thiffault had a serious cardiac situation, in addition to other medical problems."  (*See* plaintiff's memorandum, p. 7.)  To support this position, he refers in his statements of facts to:

---

[2]    Mr. Thiffault's Complaint also makes no reference to a disability due to a cardiac condition.

- a July 1995 telephone conversation with one of his doctors regarding his complaint of chest pain (AR-0472);

- two July 1995 visits to his doctors regarding his complaints of chest pain (AR-0471, 469);

- a December 1997 visit to a cardiologist referencing two recent hospitalizations and indicating a diagnosis of "suggested aortic sclerosis" (AR-0454);

- an October 1998 APS completed by Dr. Trotter which lists chest pains as a subjective symptom, but does not include anything heart related in the objective findings section and does not indicate any Cardiac Limitation whatsoever (AR-0121-22); and

- a December 1998 visit to one of his doctors with a complaint of chest pain (AR-0731).

This statement and these references do not establish that he has a cardiac condition which entitles him to benefits under the Plan.

Mr. Thiffault did not provide Sun Life with medical records from a cardiologist or any other medical provider relating to treatment for cardiac issues after December 1998. And the records he provided showed that he had complaints of chest pains and a suggested diagnosis of aortic sclerosis, but they did not identify that Mr. Thiffault was limited in any way from performing the duties of his (sedentary) work position by any cardiac condition. Also, during the time frame that Sun Life was evaluating Mr. Thiffault's claim, his physicians did not indicate in their treatment records or on their APSs that he was disabled due to a cardiac condition. (*See e.g.* 7/00 APS by Drs. Grimaldi and Och (AR-0326-27), 8/00 APS by Dr. Phadke (AR-0328-29), 6/01 APS by Dr. Grimaldi (AR-0247-48), 1/02 APS by Dr. Grimaldi (AR-00238-39), 10/02 APS by Dr. Trotter (AR-0023-24), 10/02 APS by Dr. Och (AR-0025-26).[3]

Based on the medical records provided by Mr. Thiffault, Mr. Thiffault's letter of appeal, the subsequent letter from Mr. Thiffault's counsel (enclosing only the records of Mr. Thiffault's

---

[3] In fact, in each of these six APSs, section 5, entitled "Cardiac (If Applicable)," was either left completely blank or it was expressly noted by the physician that the cardiac section was "N/A" or not applicable. Id.

treating psychologist) and the six APSs submitted, it is clear that Sun Life did not "know from the inception of his claim" that Mr. Thiffault had "a serious cardiac situation." To the contrary, prior to this lawsuit, neither Mr. Thiffault nor his counsel alleged that Mr. Thiffault suffered from a disabling cardiac condition and none of the medical records or APSs submitted document any restrictions or limitations attributable to any alleged cardiac condition.

        2.        There is insufficient evidence in the Administrative Record to establish that Mr. Thiffault has a neurological condition that totally disables him.

Mr. Thiffault also appears to claim that he suffers from a neurological condition based upon the December 20, 1998, letter from Dr. Epstein, Director, Pulmonary Sleep Medicine Laboratory. In that letter, Dr. Epstein states:

> Mr. Thiffault has Obstructive Sleep Apnea, a disorder causing repetitive episodes of stopping breathing while sleeping, Periodic Limb Movements of Sleep, a neurological disorder resulting in repetitive jerking of his limbs … (AR-0387).

Mr. Thiffault's counsel has added the emphasis of underlining "neurological disorder" in this sentence. (*See* plaintiff's statement of undisputed facts, para. 11.) But again, a diagnosis alone does not mean that Mr. Thiffault has a neurological condition that disables him under the terms of the Plan. First, it is clear from reading Dr. Epstein's letter that it is the Periodic Limb Movements of Sleep that Dr. Epstein indicates is a neurological disorder. However, as of the time that Sun Life terminated Mr. Thiffault's benefits, none of his physicians claimed that he was disabled due to Periodic Limb Movements of Sleep. (*See e.g.* 4/00 letter from Dr. Phadke (AR-0727-28), 6/01 and 1/02 APSs by Dr. Grimaldi (AR-0247-48, 238-39), 3/02 letter from Dr. Phadke (AR-0702), 10/02 note from Dr. Pyun (AR-0671), 11/02 note from Dr. Trotter (AR-0716), 1/03 letter from Dr. Grimaldi (AR-0036)). Similarly, they did not claim that he was disabled due to Obstructive Sleep Apnea, PMR or anemia. Id.

      C.      Sun Life's Decision to Deny Further Benefits Must Be Upheld Because Sun Life Did Not Act In An Arbitrary Or Capricious Manner.

      1.      A review of the *entire* Administrative Record establishes that Sun Life was not arbitrary or capricious in its decision.

Mr. Thiffault's references to the medical records up to and including 1998, ignore all of the records that follow, and it is those medical records, which are part of the Administrative Record, which show that Mr. Thiffault's <u>medical</u> issues were being treated, had adequately resolved, and that the only issues that remained were his <u>mental health</u> issues. For example:

- Dr. Phadke's March 2002 letter that Mr. Thiffault's sleep apnea and periodic movements of sleep <u>were under good control</u>. (AR-0702);

- Dr. Calkins May 2002 note that following his right carpal tunnel release, Mr. Thiffault was <u>doing well</u>. (AR-0697);

- Dr. Pyun's October 2002 note that Mr. Thiffault reported that <u>he "feels great … every symptom has gone away</u> including the morning stiffness, pain, lack of movement … <u>He is sleeping well</u> …" (AR-0671) (emphasis added); and

- Dr. Trotter's November 2002 note that Mr. Thiffault reported "<u>feeling very well</u> now." Dr. Trotter noted "<u>[f]rom a work standpoint, the **only** thing keeping him out of work now is mental health issues.</u>" (AR-0716) (emphasis added).

In light of these statements by Mr. Thiffault's own treating physicians, his reliance on <u>Colby v. UnumProvident</u>, 328 F. Supp. 2d 186 (D. Mass. 2004), (plaintiff's memorandum, p. 11), is entirely misplaced. In contrast to Mr. Colby, Mr. Thiffault's physicians have clearly indicated that only mental health issues are keeping him out of work now. Sun Life did not act arbitrarily or capriciously in making its decision.

      2.      Contrary to Mr. Thiffault's assertion, Sun Life did not simply classify his disability as a mental illness and close its eyes to the rest of his medical records.

Mr. Thiffault's claim that Sun Life simply classified his claim as a mental illness and then washed it's hands of his medical issues, is not supported by the Administrative Record.[4] It was reasonable and appropriate for Sun Life to have a nurse first review the records to suggest what additional medical personnel should be involved in evaluating Mr. Thiffault's claim. The nurse sought and obtained BOTH medical and psychiatric reviews. To evaluate Mr. Thiffault's claim, Sun Life obtained medical and psychiatric file reviews by a nurse, (AR-0372-73), a licensed social worker, (AR-0321), a board certified internal medicine physician, (AR-0134-35), and a board certified specialist in psychiatric medicine (two times), (AR-0137, 0321-22), and sent him for an independent medical examination, (AR-0095-96, 0087-93), all prior to the initial denial. Once the appeal information was received from Mr. Thiffault and his counsel, Sun Life subjected the entire file to reviews by a board certified specialist in physical medicine and rehabilitation, (AR-0527), and a board certified specialist in psychiatric medicine, (AR-0521-23).

Mr. Thiffault's treating physicians, as well as Sun Life's reviewing physicians, agreed that Mr. Thiffault's sleep problems, PMR and carpal tunnel syndrome were under control and did not limit Mr. Thiffault from performing the material and substantial duties of his own occupation. (*See e.g.* 4/00 letter from Dr. Phadke (AR-0727-28), 6/01 and 1/02 APSs by Dr. Grimaldi (AR-0247-48, 238-39), 3/02 letter from Dr. Phadke (AR-0702), 10/02 note from Dr. Pyun (AR-0671), 11/02 note from Dr. Trotter (AR-0716), 1/03 letter from Dr. Grimaldi (AR-0036), 1/03 memorandum from Dr. Sarni (AR-0527), and 1/03 memorandum from Dr. Himber (AR-0521-23)). Accordingly, in his memoranda, Mr. Thiffault does not provide a single cite to

---

[4] In addition, his statement that Sun Life paid him only 24 months of disability benefits (plaintiff's memorandum, p. 1), is not correct. Indeed, Sun Life paid Mr. Thiffault benefits for the time period from November 19, 1998 to March 31, 2002, while it continued to evaluate his claim for benefits.

the Administrative Record to show that any of his physicians found him disabled due to these conditions.

Based upon all of the information in the Administrative Record, Sun Life reasonably concluded that as of March 31, 2002, there was insufficient evidence in the Administrative Record that Mr. Thiffault was unable, due to a physical injury or sickness, to perform the material and substantial duties of his occupation.

> 3. Sun Life did not have to obtain a medical IME prior to discontinuing Mr. Thiffault's benefits.

Sun Life did not have any duty to send Mr. Thiffault for an independent medical examination "to address the medical conditions he and his medical providers claimed were causing his disability." (*See* plaintiff's memorandum, p. 7.) Mr. Thiffault's suggestion that Sun Life's decision was arbitrary and capricious because it did not arrange for a second independent medical examination of him is incorrect.

Mr. Thiffault had an affirmative duty to present to Sun Life any evidence he wanted it to consider. See Brigham v. Sun Life of Canada, 317 F.3d 72, 84-85 (1st Cir. 2003); Sandoval v. Aetna Life & Cas. Ins. Co., 967 F. 2d 377, 379-381 (10th Cir. 1992); Jorstad v. Conn. Gen. Life Ins. Co., 844 F. Supp. 46, 58 (D. Mass. 1994). Sun Life's duty was to reasonably assess the information presented to it. And, based on the information Mr. Thiffault and his counsel presented, Sun Life reasonably concluded that: (a) any alleged physical conditions Mr. Thiffault suffered from had either resolved or were well controlled; and (b) the only potentially disabling condition was psychiatric in nature and, therefore, subject to the Plan's 24-month Mental Illness provision. In addition, Mr. Thiffault never asked for a medical IME. He had the same attorney in 2003 when his benefits were discontinued as he does now, yet it is only now that he claims that another IME was warranted.

Sun Life did not have a duty to obtain another independent medical examination to establish a reasonable basis for its denial. *See* Cook, 320 F.3d at 23 ("To be sure, we are not suggesting that [obtaining an IME is] necessary in every termination of disability benefits to establish a reasonable basis for the termination."); *see also* Tinkham v. Conn. Gen. Life Ins. Co., 2000 U.S. Dist. LEXIS 9944, *27 (D. Me.)(in finding that not arranging for an IME and not arranging for claim file to be reviewed by medical consultant was not arbitrary and capricious, court noted it was unable to find a reported case indicating such a requirement).

The question here is simply whether Sun Life's decision to discontinue Mr. Thiffault's benefits in 2003 was reasonable based upon the information available to Sun Life. An examination of the entire Administrative Record reveals that it was.

    D.    Mr. Thiffault's References to Facts and Materials Outside of the Administrative Record Do Not Form A Basis for Summary Judgment to be Granted in His Favor.

Mr. Thiffault's memoranda include a section entitled "Physical vs. Mental" which purports to describe the physical nature of mental illness. (*See* plaintiff's memorandum, pp. 9-10.) The First Circuit, has reaffirmed "that statements contained in a memorandum or lawyer's brief are insufficient, for summary judgment purposes, to establish material facts." Betances v. Sea-Land Service, 248 F. 3d 40, 43 (1st Cir. 2001). Where, as here, Mr. Thiffault makes statements in his memoranda that are factual in nature, but which lack reference to any cite at all, let alone the Administrative Record, these statements are insufficient for summary judgment purposes to establish material facts. Id. This section of the Mr. Thiffault's memoranda should be disregarded by the Court.

    II.    CONCLUSION AND RELIEF REQUESTED

For the reasons stated above and in Sun Life's motion for summary judgment and memorandum in support thereof, the Court should deny Mr. Thiffault's motion for summary

judgment, grant Sun Life's motion for summary judgment, and enter final judgment in Sun Life's favor.

                                                      SUN LIFE ASSURANCE COMPANY OF CANADA

                                                      By its attorney,

                                                      /s/ Elizabeth L. B. Greene
                                                  Joan O. Vorster, Esq., BBO #550375
                                                  Elizabeth L. B. Greene, Esq., BBO #561456
                                                  Mirick, O'Connell, DeMallie & Lougee, LLP
                                                  100 Front Street
                                                  Worcester, MA 01608-1477
                                                  Phone: (508) 791-8500
                                                  Fax:     (508) 791-8502

Dated: August 22, 2006

## CERTIFICATE OF SERVICE

      I hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 22, 2006.

                                                      /s/ Elizabeth L. B. Greene

Dated: August 22, 2006